# HIGH COURT

## OF

# ERRORS AND APPEALS.

## JANUARY TERM, 1842.

---

## Henderson *et al. v.* Wilson.

Under the plea of non assumpsit, alterations of a note after it was made may be shown in discharge of the parties to the note, not cognizant of the alterations, although the plea is not verified by oath.

When the time of the payment of a note is altered after it has been executed, the parties to the note, who do not consent to such alteration, are discharged.

IN ERROR from the circuit court of the county of Madison.

This was an action of assumpsit on a promissory note for one thousand dollars, drawn payable to the Alabama and Mississippi Rail Road Bank, at their banking house in Brandon, due at twelve months after the 1st January, 1838, and dated 9th June, 1837, executed by Tho's Saunders as principal, and Lawson F. Henderson, Tho's J. Smith, and Archibald Clarke, as securities, so expressed on the face of the note. It was endorsed, "Pay the contents to Etherton Wilson, without recourse, and without recourse on the

bank. Z. P. Wardell, cashier." The action was brought as endorsee. The declaration contained a count on the note and endorsement, setting forth the making and delivery of the note to the bank, and its endorsement to the plaintiff; and also a count for money had and received. On the trial, the plaintiff discontinued as to Saunders, the principal, and took a judgment by default against Clarke. The other defendants, Henderson and Smith, pleaded separately the general issue, but not under oath. The plaintiff made the following admission in writing: "The plaintiff admits that the note sued on was presented to the Brandon Bank for the purpose of being discounted, and was not discounted; and that the same was transferred by the bank without any consideration." The defendants offered to prove that the note had been altered since its execution, in a material part, without the knowledge or consent of the sureties. The court rejected this evidence, on the ground that the execution of the note was not denied by plea under oath; the defendants insisting that under the money count the note might be given in evidence, and that the testimony offered was admissible, unless the plaintiff elected to proceed only on the special count and strike out the other, which, however, the plaintiff refused to do. Mr. Sterger proved that the plaintiff and himself were partners in a country retail store, and that Saunders, the principal maker, some time about September of 1837, came to the store and there transferred the note to Wilson, the plaintiff, for his (the plaintiff's) interest in the store, which was estimated, and he thought rightly, at one thousand dollars. Wilson had been absent from the state during that year up to about that time. It was also proved that it was the custom of the Brandon Bank, during 1837, to discount notes only on the pledge of cotton, in addition to the security on the note; and this custom was generally known and relied on by the securities to the notes. This was proved by the same witness, Sterger, and by J. J. Henry. The endorsement was not on the note when plaintiff first got it from Saunders. Dr. Catchings, a former president of a bank, and Mr. Munn, cashier of the Commercial Bank of Natchez, Canton branch, testified, on the part of the defendant, that the note sued on was in the form of those discounted in the bank; that, after refusal to discount a note,

Henderson *et al. v.* Wilson.

it was unusual, and would be a violation of good faith, to transfer a note; and to receive such a note was out of the usual course of business. This evidence, after it had been given, was ruled out by the court and withdrawn from the jury, the plaintiff offering to prove at the same time that it was customary for individuals to take such notes for private debts, in order to raise money in bank. This the court refused of its own motion.

At the instance of the plaintiff, the presiding judge charged the jury—

1. That it was not competent for the defendants to deny the right of the bank to endorse the note.

2. That if the jury believed that the note sued on came to the hands of the plaintiff *bona fide*, without knowledge that the bank endorsed the same without consideration, they must find for the plaintiff.

3. That unless it had been proved that the note was made for a particular purpose, and used for a different purpose, if the plaintiff received it bona fide for a valuable consideration, he is entitled to recover.

4. If the note sued on was signed by the maker, with a blank for the time of payment, the plaintiff had a right to fill up the same; and if filled up differently from the contract, the defendant should show it.

On the part of the defendant, the court charged the jury—

First. That the plaintiff occupied the same position before the court that the bank would if now the plaintiff; and if the bank could not recover, the plaintiff could not, so far as regards want of consideration, or failure of consideration [between the bank and defendants] before notice of assignment or suit brought. And his honor refused to grant the following instructions, asked for by the defendants:

Second. That if the jury believed that the note was made to be discounted at the Brandon Bank, and was not discounted—if the bank were now plaintiffs—they could not recover.

Third. That unless the jury believed that the plaintiff came to the possession of the note without a knowledge of the facts that it was made to be discounted, and had been refused to be discount-

ed; and unless he paid for it a valuable consideration in the usual course of business, he is not entitled to recover.

Fourth. That if the jury believed that the note was made to be discounted at bank, and was transferred by the bank without any consideration, by which it was diverted from its original destination, with a knowledge of those facts by the plaintiff, (when he received it,) he is not entitled to recover.

Fifth. That the circumstances were such as to put the plaintiff on the inquiry as to the facts.

Sixth. That if the jury believe that the note was signed by the securities under the belief that, in pursuance of the custom of the bank, before it was discounted the principal maker would be required to pledge his cotton to meet *it*, and such custom was known to the plaintiff, or he had sufficient reason to put him on the inquiry, that the transfer of the note would operate as a fraud on the securities, that the plaintiff was not entitled to recover.

Seventh. That if the jury believe that the sale or transfer of the note in payment of the goods was not in conformity to the intent of the parties, and the plaintiff had sufficient reasons to put him on the inquiry as to the facts, he is not entitled to recover.

Eighth. That the plaintiff, as assignee, cannot recover, without proof that Z. P. Wardell is the cashier of the bank, and had authority to make the assignment.

The jury found a verdict for the plaintiff, and the defendants moved for a new trial, on the following grounds:

1. Because the verdict is contrary to the charge of the court on the first instruction granted to defendants.

2. Because the court granted the instructions asked by the plaintiff, and refused those asked by the defendant.

3. Because the court refused to receive evidence of the alteration of the note after its execution.

4. Because evidence has been discovered since the trial, going to show the purpose of the note, and that the Bank had notice not to discount it or permit it to be used with the name of the surety Henderson, to it.

5. That the plaintiff did not prove the corporate capacity of the Brandon bank.

Henderson *et al. v.* Wilson.

6. That the court ruled out the evidence as to the form of the note, and that its transfer was out of the usual course of business.

The court overruled this motion, and defendant Henderson tendered his bill of exceptions, and now moves to reverse the judgment, assigning the following errors, to wit:

1. That the circuit court erred in granting the instructions asked for by the plaintiff below.

2. That the court erred in refusing the instructions asked for by the defendant below.

3. That the court below erred in refusing to admit evidence as to the usage of the Brandon bank.

4. That the court erred in refusing to admit evidence or in ruling out the evidence of Dr. Catchings and Mr. Munn, as to the form of the note, the custom of banks in regard to such notes, and that they are not received in the *usual course* of trade.

5. That the circuit court erred in refusing to receive evidence of the alteration of the note after its execution.

6. That the court erred in refusing to set aside the verdict, and grant a new trial, on the grounds stated in the motion.

Hill for the plaintiff in error.

It is perfectly clear that a note without consideration is void, as between the original parties to it. 7 John. Rep. 26; 17 John. Rep. 301. If the bank were now plaintiff suing in its own right and for its own benefit, it cannot admit of a doubt that it could not recover on the evidence shown in this case. And on what principle of law or common sense can the plaintiff claim higher rights than the party from whom he derives title? By taking an endorsement from the bank, he voluntarily puts himself in the condition of the bank; puts the title of the bank in issue, and subjects himself to the provisions of the statute referred to, (Rev. Code, 165.) Indeed he expressly refers to the statute in his declaration, saying that by means whereof and by force of the statute, &c., the defendants became liable, &c. The bona fide holder of an over due accommodation note cannot recover against a maker, who merely signed it for the payee's accommodation, 4 Petersdorf, 482; Chitty on Bills, 244. Our statute having put all assigned paper on the footing of notes at common law negotiated after due, so as to let in any

Henderson *et al. v.* Wilson.

defence as between the original parties, if at common law the bona fide holder of an over due accommodation note cannot recover against the maker, who merely signed for the payee's accommodation, by parity of reasoning it would follow that in this state the assignee or endorser of a note, although a bona fide holder, cannot recover against an accommodation maker, if the endorser could not.

The case of the Commercial Bank of Natchez, use, &c., *vs.* Osman Claiborne and others, decided by this court at April Term, 1840, would seem to be authority against these positions. Without at all impugning the authority of that case, it is insisted that there is a broad and manifest distinction between that case and this. In that case the action was brought in the *name* of the bank, for the use of Briggs, Lacoste & Co. who advanced money on a note intended for bank discount, but which had been refused. The bank was then regarded as a trustee *without* interest, and the bank's name merely used as instrumental to a recovery for the parties beneficially interested. It seems from the evidence proposed to be given, that such had been the custom of the real plaintiffs under the sanction of the bank; and the case may well be likened to that of the Bank of Chenango *v.* Hyde, 4 Cowen, 567, (which will hereafter be referred to) where the bank had consented to act as agent to collect the money. In that case the plaintiffs in interest rely for a recovery on the transfer by delivery from the principal maker.

. Adams Bank *vs.* Jones, 16 Pickering's Rep. 574, was an action on a note of S. & S. partners, principals, and A. surety, payable to the bank, and made for the purpose of being discounted, and proceeds to be applied to partnership debts. The note was delivered by one partner to his separate creditor, in favor of his debt previously existing and for goods bought at the time on his own account. The creditor was informed at the time that the note had been presented for discount and refused, but would be discounted in a short time if again presented. It was afterwards presented at bank and refused, and this action brought in the name of the bank without its consent for the benefit of the holder. The court held, that the action could not be sustained without the consent of the bank, and distinguished this case from that of the Bank of Chenango *v.* Hyde, 4 Cowen, 567, where the bank undertook to act as the agent of the holder of the note who had

advanced money on it.   But the court goes further, and says that "even if such consent had been given, this action could not be maintained, because the bank refused to discount it; there never was any valid contract between them and the makers of the note; the mere signing of the note did not make it a valid contract; the assent of both parties is essential to the validity."

Marven *v.* McCullum, 20 Johns. 288, is cited and relied on in the foregoing case.   It was an action of assumpsit on a note payable to one Averill or bearer, who had promised to discount it. Averill proved that he never gave the note, and had nothing to do with it.   It appeared that the principal maker sold the note at a discount to the plaintiff.   Held, that the note had no legal inception until delivered to some person as evidence of a subsisting debt; it had no legal existence until delivered to the holder, and then the transfer was usurious.   The case would be parallel, if Averill had indorsed the note to the person who bought it.   His position in that case would be that of the bank in this.   The note in that case, however, was payable to bearer, and needed no indorsement to confer title; but if the note had no legal existence it went into the hands of some person for a subsisting debt, until in short it came to the plaintiff, then the bank, indorsement is utterly void.

The case of Gage *v.* Kendall, cited by the plaintiff's counsel in the argument below, to show that a party may sue in the name of one having no interest, proves nothing.   It does not sustain the position that if the nominal plaintiff has no cause of action, and *never had*, that he can confer one on another.

In Woodhull *v.* Holmes, 10 Johns. Rep. 231, the note was made by the defendant, to be discounted in bank, and was fraudulently passed off to a broker.   Held, that the holder was not enabled to recover, without proving a bona fide possession.

In Skelding *v.* Warren, 15 Johns. 270, an accommodation note went into the plaintiff's hands out of the usual course of trade, and after notice, and it was held that he could not recover against the indorser.

Denniston *v.* Bacon, 10 Johns. Rep. 196, the note was made to be discounted in bank, on certain terms, and being refused at bank, was circulated by the payer.   Held that the circulation of

the note without notice of the terms was a fraud on the accommodation parties to it.

Wardell *v.* Howell, 9 Wendell, 170. An accommodation note was given to be used in renewal of a former note in bank, but instead of being so used it was transferred by the principal maker as security for another debt. Held, not recoverable as against the indorsers. The rule is very intelligibly laid down in this case, that when a note has effected the substantial purpose for which it was designed, the accommodation maker or indorser cannot object that it has not been effected in the precise way originally contemplated; but when the note has been diverted from its original destination, and fraudulently put in circulation, the holder cannot recover against the accommodation maker or indorser, without proving that he received it in good faith in the ordinary course of trade, and for a valuable consideration. See also Coddington *v.* Bay, 20 Johns. 651.

Brown *v.* Sabor, 5 Wendell, 566. An accommodation note was made to be discounted in bank, was passed off by the maker for whose benefit it was made to a vender of lottery tickets, for a quantity of tickets, after it had been rejected at bank. Held, that it was not recoverable from the indorser. The circumstances of that case and this are strikingly similiar, to show the want of bona fides in the transaction. 1. The note was in the hands of the maker. 2. It was payable to the bank, and had bank marks on it. 3. It was transferred out of the usual course of the maker's business. Saunders was transferring this out of the usual course of business, which was not to buy country stores.

Vallette *v.* Parker, 6 Wendell, 615. A note delivered as an escrow was fraudulently given to the payer and put in circulation. Held, not to be recoverable, unless the holder prove that he received it bona fide in the usual course of trade. For the same general principle, see also Smith *v.* Dewitt, 6 Dowl. & Ryl. 120; 16 Com. Law Rep. 256.

Cranch *v.* White, 6 Carr. & Payne, 767; 25 Com. Law Rep. 641. One drew and indorsed a bill of exchange to be discounted, and gave it to his friend for this purpose; the friend placed it in the hands of a broker. The broker being indebted to a widow, delivered the bill to her son in payment of his debt, and got credit

accordingly.   Trover was brought against the son to recover the bill.   Tindall, Chief Justice, in his charge to the jury, says—"the question is, whether the defendant had any knowledge or notice or means of knowledge in his power that the bill was only put in the broker's hands for discount.   For if the defendant had the means of knowledge in his power that Roberts, the broker, had no property in the bill, but was committing a fraud on the owner of it, he can have no right to keep it."

The court below should have charged the jury in this case as Chief Justice Tindall did in the preceding : " that if the defendant had any knowledge or notice or means of knowledge in his power that the note was only made for the purpose of discount at the bank, and that at the time of the transfer by Saunders he, plaintiff, had the means of knowing that the bank had no property in the note, he was not entitled to recover." But the court refused to grant by way of instruction substantially the same charge as that contained in the foregoing case. See defendant's 3d, 4th, 5th, 6th, and 7th instructions refused by the court.

Gill *v.* Cubit, 3 Bar. & Cress. 466; 10 Com. Law Rep. 154.   A bill of exchange was stolen at night and next morning taken to a broker by a person whose name was unknown, but whose features were known, and discounted without any questions being asked. In an action on the bill by the broker the court held " that if the jury believed that the plaintiff took the bill under circumstances which ought to have excited the suspicions of a prudent man, they should find for the defendant."   And such should have been the charge of the circuit court in this case, and yet substantially the charge he refused to give.   In the same case Bayley, Justice, said, " it was properly put to the jury whether there was due caution used by the party taking the bill; if there was not, he has not discounted this bill in the usual and ordinary course of business, or in that way in which business rightfully and properly conducted would have required.   I consider it part of the *bona fides* whether the plaintiff has asked all those questions which in the ordinary and proper manner in which business is conducted a party ought to ask."

7*

Did the plaintiff in this case receive this note *bona fide*, after making proper inquiries, in the usual course of business, and without the means of knowing what is meant by the usual course of business ?

In Coddington *v.* Bay, 20 John. Rep. 651, Mr. Justice Spencer says, " by the usual course of trade, I understand that the holder shall take the note in *his business*," &c. The plaintiff in the case before the court was a petty retail country shopkeeper. Was it in the course of his business, in his *usual course* of business, to sell goods by wholesale, a thousand dollars worth at a dash? Can such proceeding with any propriety be called his usual course of business? In Brown *v.* Tabor, 5 Wend. 566, the note was not considered as taken *bona fide* in the usual course of business, because the party who purchased the lottery tickets by the quantity, in exchange or sale of the notes, was not a vender of lottery tickets. Nor was Wilson a wholesale dealer, or Saunders, who sold the note in this case, at that time a merchant.

Were the means of knowledge in his power, or did he inquire into the circumstances?

From the evidence of Sterger, his partner, he inquired at least into the *solvency* of the securities, what he could learn. Living in the same neighborhood with all the parties, he had full means of knowledge, of which he either availed himself, and concealed, or wilfully neglected. The form of the note, and the known custom of the bank, were sufficient to put him on his guard. The effect of a special indorsement *without* recourse, is sufficient to put the indorsee on the inquiry, so as to let in the defence of indorser or maker. 10 Mass. Rep. 31.

I now refer to a case lately decided by the supreme court of the United States, 14 Peters, 318, which is perfectly conclusive of this case. A note was made for discount in the Mobile Bank, payable according to the custom there to the cashier, and sent by the maker to his factor in Mobile. The bank refused it; but while in bank it received some marks, known as marks of the bank. The factor put this note in circulation for value, on his own account. In an action by the holder against the makers, it was held that under the circumstances he was not entitled to recover. The paper

Henderson *et al. v.* Wilson.

on its face carried sufficient circumstances to put the plaintiff on the inquiry, and to require strict scrutiny into the title of those from whom he received it, and failing in this, he must stand in the condition of the factor who first fraudulently put it in circulation. And the court goes even further, and says, had the plaintiff purchased the note *bona fide,* and without notice of the fraudulent conduct of the agent, (the factor,) he could not recover. The evidence given in the preceding case to show the above facts was objected to, as was the charge of the court predicated on it. It is precisely of the same kind as that ruled out by the court in this case. The testimony of Catchings and Munn as to the form of the notes to be discounted at the Brandon Bank, that it was unusual and out of the ordinary course of business to take such notes in common transactions, and a breach of good faith in the Bank to indorse them.

The cases relied on by the plaintiff below are Powell *v.* Waters, 17 John.; Bank of Rutland *v.* Buck, 5 Wend. 66; Bank of Chenango *v.* Hyde, 4 Cowen, 567; 10 Wend. 315. In Powell *v.* Waters, 17 John., the note was not payable *to* a bank, but *at* a bank, and negotiable merely by filling up a blank indorsement. The holder acquired a legal title to the paper, and by the terms of the instrument the payee was authorized to use an unlimited discretion in its use; but the ground on which the case is put is, that the note discovered the purpose originally intended, for although not discounted at the bank, the proceeds went to the payment of the note in bank, of which it was to have been a renewal.

The case of the Bank of Rutland *v.* Buck, 5 Wendell 66, was that of a note payable to a bank for the purpose of raising money by discount, for the accommodation of the maker. On its being refused at bank, it was passed off by the maker, as collateral security for the payment of a judgment against him; and it was held that the surety was liable. The authority of this case may be doubted. It seems irreconcileable, on principle, with the other cases, especially with that of Brown *v.* Tabor, on a subsequent page of the same volume, 5 Wend. 566; and this is the opinion of the editor of Bayley on Bills, page ——, (in note.) The note, however, was given without restriction, for the purpose of raising money for the maker's accommodation, and if it had been discounted

in bank, the proceeds might have been applied to the payment of this judgment without any fraud on the surety; and it may indeed be inferred that this was the purpose of the note. If so, it comes within the reason of the other cases, that is, it has answered the purposes of its creation. It is also important to observe, that the note was transferred *before due.* Had it been after due, the decision would have been *otherwise,* and our statute puts all negotiable paper on the footing of notes at common law, negotiated after due.

Bank of Chenango *v.* Hyde, 4 Cowen, 567, is the case of a note payable to a bank, for the purpose of discount. The note here answered the purpose for which it was originally intended. The same principle governs as in Powell *v.* Waters, 17 John.; and the same reason equally applies to the case from 10 Wend. 315, that when an accommodation note has effected the substantial purpose for which it was designed, the surety has no right to complain that this has not been done in the precise manner contemplated. Wardell *v.* Howell, 9 Wendell, 170.

The case of the Commercial Bank of Natchez *v.* Claiborne and others, from this court, already referred to, was an action for the benefit of Briggs, Lacoste & Co., who had advanced money on a note made to be discounted at bank. The real plaintiffs offered to prove that it was their general custom to take such notes from their customers, advance money on them, and take a check from the maker, so as to receive the money on the note being discounted at bank. The circuit court excluded this evidence, and this court held that he erred in so doing, and that Briggs, Lacoste & Co. had a right to show that they became the holders of the note *bona fide* and in their established *course of business,* and showing they were entitled to recover.

In the case now before the court, the circuit judge ruled out the evidence of Dr. Catchings and Mr. Munn, as to the very point which was held so material in the case of the Commercial Bank of Natchez *v.* Claiborne—whether the note was taken *bona fide* in the *general course of business.* If in the latter case it was held so material that on its reception the plaintiff could recover, it is surely admissible on the part of the makers to contradict it by showing that such notes (at least in this part of the country) were not receivable in the usual course of business. It is also import-

ant to notice another distinction between that case and this. The note in that case, although not discounted at bank, was discounted by the real plaintiff; its object was to raise money; that was effected, and, although not in the precise manner originally intended, the sureties have no right to complain; but the object of the note here is entirely defeated and fraudulently perverted by the plaintiff purchasing this note for a lot of goods, which it is submitted was out of the usual course of business, as to these parties. So far, then, from this case being opposed to the positions contended for, it goes to support them, and is in perfect harmony with those already cited.

On the whole, it is insisted that the cases sustain the proposition with which I set out, to wit: That where an accommodation note is given *without any particular purpose,* and it is transferred bona fide in the *usual course of business,* the surety or accommodation maker is bound; but when such note is made to be used only in a particular way, and is diverted from its original destination, and fraudulently put into circulation, the holder cannot recover against the surety or accommodation maker, without showing that he received it in good faith in the ordinary course of business, and paid for it a valuable consideration. And if the holder had notice of its original destination and fraudulent circulation, or sufficient reason to put a prudent man on the inquiry as to the circumstances, he cannot recover, although he paid for it a valuable consideration.

The foregoing remarks apply to the first and second causes assigned for error, and, if correct, show that the court below erred in granting the first, second and third instructions asked by the plaintiff, and in refusing the second, third, fourth, fifth and seventh instructions asked by the defendants.

As to the plaintiffs' second instruction, in these words—"That if the jury believed that if the note came to the hands of the plaintiff *bona fide,* without knowledge that the bank endorsed the same without consideration, they must find for the plaintiff"—it is difficult to understand it. Most certainly the plaintiff knew he procured the endorsement from the bank, which was a special one to himself, that the endorsement was without any consideration. He admits it himself, and the jury could never, consistently with

this admission and the evidence, come to the conclusion that the plaintiff did not know that the endorsement was without consideration. The proof was that there was no endorsement on the note at the time Saunders sold it to the plaintiff. The plaintiff must therefore have procured it himself.

Instead of the third instruction granted to the plaintiff below, it is submitted that the court should have charged the jury that if they believed that the note sued on was made to be discounted in the Brandon Bank, and it was not discounted, and was afterwards transferred to the plaintiff with a knowledge of these facts, or sufficient reason to put him on the inquiry, he was not entitled to recover, although he had full value for it; and further, the court should have submitted the question to the jury, whether the transfer of the note and its receipt by the plaintiff was in the usual course of business.

Again, it is insisted that the court below erred in refusing the defendant's sixth instruction. The note professed on its face to be a contract with the bank, and must therefore be governed by all the laws and usages of the bank, one of which was general and notorious during that year, that no note should be discounted but on a pledge of cotton; and so well known was this regulation of the bank, that securities for notes offered for discount relied on it confidently for their protection. See the evidence of Sterger, (the partner of the plaintiff at the time of transfer,) and J. J. Henry.

The known custom of a bank, and its ordinary modes of transacting business enters into the contract of those giving notes for discount. Renner *v.* Bank U. States, 9 Wheaton; Mills *v.* Bank U. States, 11 Wheat.; Bank of Washington *v.* Triplett, 1 Peters, 32, sec. 5; 14 Pet. 320.

Fourth. As to the fourth ground of error, it is insisted that the circuit court committed a capital error in ruling out the evidence of Dr. Catchings and Mr. Munn. Their testimony went to show that notes in the form (it was printed) of the one in suit were not received in the *usual course of business*, but were confined to the banks for purposes of discount; that for a bank to indorse such a note would be an act of fraud on the sureties. An *offer* was made by the plaintiff to prove that such notes were recoverable in the ordinary business transactions of the country, and this

Henderson *et al. v.* Wilson.

was not objected to, but ruled out also by the court, of its own mere motion. There is, however, some difference between *offering* to prove, and *proving* a fact. It is not believed that evidence of any such custom could have been given. The *offer*, however, amounts to nothing. If it does, it only serves to show the propriety of receiving the evidence to which it was intended as a reply. All the cases referred to show the importance of the holder of such paper as this proving that he received it in the *usual* course of *business*. The requested evidence went directly to contradict this. It was therefore directed to a material point in issue—connecting this evidence with the other circumstances; that the note was drawn in the usual form of Brandon Bank notes to be discounted; that it expressed on its face that defendants were only the securities; that it was received by the plaintiff in payment of his entire interest in a country retail store, which could not be in the usual course of his business; and that it was indorsed without *recourse;* that enquiry was made as to the *solvency* of the sureties, *but* not as to the circumstances under which the note was given, and for what given—and the conclusion is irresistible, that the plaintiff either *knew* the circumstances, or was culpably negligent in not ascertaining them, and in either case should bear the loss.

Fifth. The evidence offered of alteration in the note since its execution, was competent, although there was no denial of the genuineness of the instrument under oath. The statute intended merely to dispense with proof of the maker's signature, and did not intend to preclude evidence of subsequent alteration. There is no law or rule of practice requiring the plaintiff to file the original cause of action with his declaration; and how can a defendant decide whether there has been an alteration, without a view of the instrument? Besides, the declaration contained a count for money had and received, under which this note might have been and probably was given in evidence. The plaintiff refused to strike out this count, or to select on which he would proceed. If the action is not *predicated* on the note, but it is used only as evidence under the money count, the proffered testimony was most surely admissible to destroy that already given, or to destroy *the effect* of the note as *evidence.* Notwithstanding the rejection of this evidence, the court

below strangely enough granted the plaintiff his fourth instruction having reference to the rejected evidence. In doing which it is submitted that the court erred.

Sixth. The sixth ground of error is covered for the most part by those preceding. In regard to the first ground for a new trial, it will be observed, that the verdict is directly contrary to the instruction granted to the defendant below, and the only charge of the court which is believed to be correct. It is unnecessary to urge on this court that a verdict contrary to the charge of the court on a question of law should be set aside. As to the other grounds for new trial, they require no remark; the court can look into them, and the evidence accompanying them, and decide as its sound discretion may dictate. A motion for a new trial is always one addressed to the discretion of the court. The affidavits submitted to sustain the ground, that new evidence has been discovered since the trial, may serve to aid the court in the exercise of that discretion. *They show at least that gross injustice has been committed by the verdict,* and there is much reason to believe that the plaintiff has been wilfully and fraudulently instrumental in perpetrating it.

A. H. Handy, for defendant in error.

First. The instructions asked by the plaintiff below were correct. It is not competent for a maker of a negotiable instrument, after it was gone to the world, to deny the power of a person to whom he has made it payable, to transfer it.

Dayton and another *v.* Dale, 9 Eng. Com. Law Rep. 91, Justice Bayley's opinion. If a note be deposited with a bank for a particular purpose, and be indorsed so as to give him from the face of the paper a right to transfer it, and he negotiate it, such transfer will be good against the maker, to an innocent holder, although it may be a gross breach of trust in the banker, and defeat the purpose for which the deposite was made. Bayley on Bills, 113, n. 28. When a note payable *to* a bank is the property of another, the bank may maintain an action for the use of the holder, 4 Cow. 567; 5 Wend. 66; 10 Wend. 314; Com. Bank of Natchez *v.* Claiborne, in this court, April term, 1840. If a bank can sue in her own name, she can transfer that right. It is not necessary that she should have a vested right in the note, to give her the right

Henderson *et al. v.* Wilson.

to transfer it; for if a person who should have indorsed become bankrupt, he may nevertheless make the indorsement, though all interest in the paper has passed to his assignee. Bayley on Bills, 119, n. 37. On a note payable to A. for the use of B, the right to transfer is in A, though he has no interest. Bayley, 115, n. 30; ib. 120, n. 40. In the concluding part of the court's opinion, in 10 Wend. 314, it is clearly intimated that the bank would have had a right to indorse, if the note had been negotiable. This case is in many respects similar to that. In Adams Bank *v.* Jones, 16 Pickering, 577, it is clearly admitted that the bank had a right to transfer.

Second and fourth instructions are substantially the same. If the plaintiff below received the note bona fide, for a valuable consideration, without any knowledge that it was used for a purpose not intended by the makers, (the sureties,) he should have recovered, although it was used by the principal in violation of the agreement of his sureties, 17 John. 176; 1 Bos. and Pull. 648; 4 Cowen, 567.

Third instruction. If the note sued on was signed by the makers with a blank for the time of payment, the plaintiff had a right to fill up the same. Chitty on Bills, 240, note *t*; Violet *v.* Patton, 5 Cranch, 142; Putman *v.* Sullivan, 4 Mass. 45; 7 Cowen, 336. The instruction is peculiarly favorable to the defendant below, as it states that "if the blank in the note was filled up in a manner different from the contract of the makers, the defendant must prove it." This is nothing more than the familiar principle, that fraud will not be presumed, but must be proved, and gives the defendant full power to establish fraud on the plaintiff below. Can he complain of this when *mala fides* is the very ground of his defence?

It is conceived, then, that the instructions of the plaintiff below are not only correct as legal principles applicable to the case, but that they embrace every principle of law necessary to enable the jury to find a proper verdict.

Second. The instructions of the defendant were properly refused by the court.

The second prayer is not correct as a legal principle; for although the note was made to be discounted by the bank, and was

not discounted, the bank could have recovered for the use of a bona fide holder, if the note had not been transferred. 4 Cowen, 567; 5 Wend. 66; 10 ib. 314. Apart from this, however, it was rightly refused, because it states that "if the bank was plaintiff, it could not recover." The court was bound only to declare the law between the parties before it; any other instruction is a hypothetical proposition, not directly applicable to the case. It is not error to refuse such prayer. Etting *v.* U. S. Bank, 11 Wheat. 59.

The third and fourth prayers are substantially the same as the second and fourth instructions of the plaintiff already given by the court, and the court was not bound therefore to repeat the same principles of law to the jury. In Kelly *v.* Jackson *et al.* 6 Peters, 628, the supreme court of the United States says, "no court is bound to repeat over to the jury the same substantial proposition of law, in every variety of form *that the* ingenuity of counsel may suggest. It is sufficient if it is once laid down in an intelligible and unexceptionable manner," and conclude, "that no injustice has been done to the defendant by refusing to give the instruction prayed for; *since in a more general form it had already been given.*" The only points-embraced in these prayers are, whether plaintiff received the note *bona fide,* and for a valuable consideration, whether he knew that it was used for a purpose not intended by the makers, and whether he was aware that the bank in transferring it was acting improperly. And these are all fully covered by the second and fourth instructions already given at the instance of the plaintiff. If the instruction be objectionable on a technical point of law, and yet substantial justice be done; or generally if the merits have been fully and fairly tried, a new trial will not be granted, for the application is to the discretion of the court. Nor will a judge's instruction be overruled on a motion for new trial, on account of particular expressions, if it be such as on the whole and in substance could lead to a right conclusion. Bac. Abr. tit. 'Trial,' letter L., sec. 3. p. 769, 7 Lond. ed.

The fifth prayer asks the court to say that "the circumstances were sufficient to put the plaintiff on the inquiry," &c. This would be to usurp the province of the jury, who alone are the judges of the facts and circumstances of a case. It would be a declaration by the court of what those circumstances were, which

Henderson *et al. v.* Wilson·

might be, and really are in this case, the very hinge on which the case turned. The legislature has wisely prohibited the courts from charging juries as to the weight of testimony; and this prayer clearly comes under that prohibition. But independent of our prohibitory statute, it is held to be no ground of error that the court refused instruction which was so stated that it involved an opinion on matters of fact, as when the opinion of the court was prayed " *under the circumstances of the case*," which had not been found as facts. United States *v.* Burnham, 1 Mason's C. C. Rep. 57. This prayer was therefore properly rejected.

The sixth prayer was properly refused for the same reasons stated above in reference to prayers three and four; because, so far as the instruction desired by it is applicable to the case, it had been given in substance in the plaintiffs' instructions. But the prayer is in the main inapplicable to the case, as set forth by the evidence. If the note had been discounted by the bank, without taking a pledge of cotton, according to the custom of the bank at the time, and in conformity with the alleged understanding of the sureties when the note was made, it might then have been a question, as between the bank and the sureties, whether the sureties were not discharged by the failure of the bank to take such pledge. But the note was not discounted by the bank, nor obtained from the bank by the plaintiff, but was received by him of the principal defendant in payment for goods, in the regular course of business. This was not improper in the plaintiff, according to Commercial Bank of Natchez *v.* Claiborne. If the bank had no real interest in the note, the considerations founded on the custom of the bank which induced the sureties to sign the note, cannot affect the claim of the plaintiff. True, the sureties might have signed the note for particular reasons, to enable the principal to obtain money from the bank; but of this there is no evidence. These reasons ceased to exist, so as to deprive the plaintiff of his just right, when the note became bona fide the property of the plaintiff. The first branch of the prayer is therefore inapplicable to the facts proved, hypothetical and calculated to mislead the jury. 3 How. 388. The second branch of it, in reference to the knowledge, on the part of the plaintiff, of fraud committed on the sureties by the

transfer, is already embraced in the second and fourth instructions of plaintiff.

The seventh prayer states, "That if the jury believe that the sale of the note to the plaintiff in payment of goods was not in conformity to the *original intent* of the parties, and the plaintiff had sufficient reason to put him on the inquiry as to the facts, he is not entitled to recover." This is too broad; for the note might have been sold contrary to the *original intent* of the parties and yet the sale have been approved of by the parties, actually or in contemplation of law. Yet the plaintiff, under the prayer, could not recover. As to inquiry, the law does not impose any such trouble in regard to commercial paper; and private understandings between principals and sureties are not required by the law of negotiable paper, to be scrutinized by the world. If the plaintiff had even made inquiry as to the circumstances of the note, he could only have learned that it was made to raise money on at the Brandon Bank. If the note had been discounted, he might have bought the plaintiff's goods with the money. Instead of raising the money from the bank and purchasing the goods with it, he sells the note directly to the plaintiff for the goods. Is the security's liability greater in one case than the other? In conformity with this, it is held in a similar case, Powell *v.* Waters, 17 Johns. 180, margin, that even "if the plaintiff knew when he received the note that it was intended to be discounted at the bank, *and had been refused,* it would not affect him or establish any fraud." Bay. on Bills, 113, note. The defendant, therefore, sustained no injury by the court's refusal of this prayer.

The eighth prayer is contrary to the general law, as well as the statute of this state. A cashier has prima facie authority to endorse, on behalf of the bank, negotiable securities held by it. Bay. on Bills, 117; 3 Mason, 505. Under the fourth section of the act of 1836, the defendant could not deny the authority of the cashier to make the endorsement, except by plea setting forth the defence, supported by oath.

Third. Whether the court erred or not in refusing to admit evidence as to the usage of the Mississippi and Alabama Railroad Company, it cannot be complained of by the defendant below. This

evidence was offered *by the plaintiff*, to show that individuals, in 1837, took notes for their private debts of the tenor of the one sued on, in order to raise money from the Brandon Bank, then almost the only dependence for money; and that the bank required notes like the present one, before she would discount them. This evidence of the *particular* usage of this bank was offered to rebut the evidence of Mr. Munn and Dr. Catchings, as to the *general* usages of banks, relied on by the defendant. This evidence was of the most vital importance to the plaintiff, as it served to explain away all suspicion arising from the note being payable, on its face, to the Mississippi and Alabama Railroad Company, and its misapplication. The rejection was therefore advantageous to the defendant. To justify a reversal of the court's judgment, on account of errors in the judge, it must appear that the party complaining actually or probably sustained injury thereby. No matter how erroneous the instructions, if it could work no prejudice to the appellant, it is no ground of reversal. Bosley *v.* Chesapeake Insurance Company, 3 Gill. & John. 472. Much less is it ground for new trial, which is matter of much less strictness, and where every presumption is in favor of the verdict.

Fourth. It does not appear from the bill of exceptions that the ruling out the testimony of Dr. Catchings and Mr. Munn, as to the usage of banks, &c. in taking and transferring promissory notes, was objected to by defendant at the time. Had he objected, the plaintiff might have admitted it. It would be an evil precedent to allow a party who has acquiesced in the decision of the court at the trial, to come in, after a verdict against him, and object to the opinion of the court; and the reason of the rule in 10 Johns. 322, margin, and in 1 Wash. C. C. R. 409, 440, is believed to apply here. Nor does the bill of exceptions show for what cause the evidence was ruled out. It might have been because the witnesses were interested or otherwise manifestly disqualified; and this is at least probable, as the defendant did not object. This court cannot, then, declare whether the testimony was properly ruled out or not, nor could this court establish any rule of law from the case for future action.

The evidence so far as it respects the usage of the banks *generally* is loose and immaterial, and would have been fully rebutted

8*

Henderson *et al. v.* Wilson.

by the evidence offered by the plaintiff as to *particular* usage of *this Bank*, which was rejected by the court. If the affirmative testimony was ruled out, that which fully rebutted it was rejected. That branch of the evidence stating that to endorse such a note "without the knowledge and consent of the sureties would be a violation of good faith, and to receive such notes would be out of the usual course of business," was correctly ruled out, because it was merely an expression of opinion by the witnesses from disputed circumstances, which opinion might be right or wrong, and the jury was the proper tribunal to weigh the circumstances and form opinions from them, and not the witnesses. Our laws forbid even judges in their own courts to instruct the jury as to the weight of evidence; and woful would be the jurisprudence of this country, if bank presidents, cashiers and clerks are allowed to usurp this high and dangerous prerogative.

Fifth. There is no error in the refusal of the court to admit evidence of the alteration of the note after signature, under the pleadings. The defendants pleaded non-assumpsit and no other plea, and without affidavit. The act of 1824 provides, that it shall not be competent for any person to deny the execution of any note, &c., unless by plea supported by oath. It was doubtless the intention of the legislature to place promissory notes on the same footing as specialties, in reference to their being *per se* evidence of their own execution and the liability of the parties to them. The term " *execution*" used in the act cannot mean simply the *act of signing* the note. On specialty at common law, the plea of *non est factum* puts in issue the *execution* of the deed; but it extends also to its continuance as the deed of the party at the time of pleading. 2 Stark. Ev. 270. In Sumpter *v.* Green, in this court, April term, 1840, Opinion Book, p. 650, the court says, " the effect of the act of 1824 is to give to the plea in this case the qualities of a plea of non est factum." A plea of non est factum denies the execution of the deed; yet this is the proper plea under which to show an alteration, Tidd's Pr. 702, because if the deed has been materially altered without the consent of the party who executed it, it is not the deed he executed. A promissory note under *this* act is invested with the same qualities, for if it has been materially altered without the consent of the maker, he may at the time of plea well

Henderson *et al. v. Wilson.*

say that he did not execute the note. He did execute one note, but that on which he is charged is not the same, because it has been materially altered. In Green *v.* Robinson, 3 How. 120, this court say, " the plea of *non-assumpsit* admits the execution of the note." What note ? that with which the defendant is charged when the suit is brought. If, then he admits the execution of the note, by pleading, he cannot afterwards say he is not liable by reason of an alteration; for this would be to deny the execution of the note which he has admitted.

Sixth. The court was justifiable in refusing to set aside the verdict and grant a new trial. 1. The verdict is not contrary to the first instruction granted to defendant. That instruction is in substance that if the bank could not recover, the plaintiff could not, so far as regards want of consideration before notice of assignment or suit brought. The worst construction that can be put upon the verdict is, that by finding for the plaintiff, they said that the bank could have recovered had she been plaintiff; and this is fully justified by the cases in 4 Cowen, 5 and 10 Wend. above cited. But this is not contrary to the instruction. It might be *contrary to the evidence*, but this is not stated as a reason for new trial, nor assigned for error, and cannot be inquired into. Another reason for the motion for new trial was, that evidence has been discovered after the case had gone to the jury, showing the intention with which the note was made, and that before transfer the bank was notified by defendant (Henderson) not to discount it or permit it to be further used. There is no showing of this evidence in the bill of exceptions, and it cannot be noticed by the court, 3 Howard, 117. It is to be regretted that the plaintiff in error has not properly made a matter of record, the process by which he was enabled, upwards of three years after the transaction, to make a new discovery of the intention with which he signed a note, and that he notified the bank not to discount or use it! Rare discoveries truly, after a verdict to prompt them!

But even if the affidavits were incorporated in the bill of exceptions, and properly before the court, they are but affidavits of merits which are no ground for a new trial, 1 Caines' R. 154; 3 How. 120, and set forth evidence within the knowledge and power of the plaintiff in error at the trial below, without showing any reason

for its absence at the trial. If the plaintiff in error was not pre-
pared with his evidence, he should have applied for a continuance.
But he tendered himself ready, and went into the trial, armed with
an admission from the plaintiff's counsel which he thought con-
clusive of his defence. Under such circumstances, can the court
grant a new trial for absent testimony? Would the court have
granted the plaintiff below a new trial, if he had lost his case by
his admission? It might have been asked with much better grace
by him, but could not have been granted.

It is worthy of remark that all the witnesses introduced were
the witnesses of the defendant below, none being introduced by
the plaintiff. From the mouths of these witnesses, the plaintiff
showed to the jury the justice of his claim. The defendant had
every advantage of their testimony, and yet it would not defeat
the honest demand of the plaintiff. This is believed to be no *slight*
proof of the merits of the plaintiff's cause, and the justice of the
verdict. Under such circumstances, it would be going very far
towards invading the right of the jury to determine the matter in
a case turning on alleged fraud and bad faith, and where the evi-
dence in support of the charge had been fully presented, on full
preparation by the party alledging it, for the court to set aside the
verdict. And "if upon the whole case, justice has been done be-
tween the parties, no new trial will be granted, although there
may have been some mistakes committed at the trial." McLanahan
*v.* Universal Insurance Co. 1. Pet. 183.

In Crook *v.* Jadis, 5 Barn. & Adolph. 909, and Backhouse *v.*
Harrison, Ib. 1098, the case of Gill *v.* Cubitt, 3 Barn. & Cres. 466,
is overruled; and the rule, as now settled in England, is, that a
party receiving a negotiable instrument is entitled to recover, un-
less he has been guilty of *gross negligence* in taking it. This is
certainly in accordance with the principles of the law of commer-
cial securities, which, for the very purposes of their institution, are
to be held valid in the hands of *bona fide* holders, in due course
of business.

In the case in 14 Peters, the note *was not taken in the usual
course of business,* (as in this case,) it having been received in
payment of a pre-existing debt, *it being over-due,* and having the
bank marks upon it, showing that it had already been in bank, and

having sufficient marks of suspicion about it to bring the receiver of it under the rule of *gross negligence.* No such circumstances exist in the case at bar.

It is believed that all the cases relied on by plaintiff in error contain such circumstances as to bring them under the present rule in England, and that no case can be found where the party having received a negotiable security in due course of business, and unaccompanied by such circumstances at the time of receiving it as must palpably have excited the suspicion of a prudent man, has been held not entitled to recover.

Mr. Chief Justice SHARKEY delivered the opinion of the court.

This action was founded on a promissory note, made payable to the Mississippi and Alabama Railroad Company, which was indorsed to the defendant in error. At the trial, it was agreed that the note had been presented to the bank for discount, but refused, and that it was transferred by the bank without any consideration received by the bank from the plaintiff. The defendants called a witness, and offered to prove by him that the note had been altered after its execution, by altering the time of payment, in changing 1837 to 1838, without the knowledge or consent of the defendants, Henderson and Smith, who were securities, Saunders being the principal. This testimony was refused by the court, because the execution of the note was not denied by plea, verified by oath. The witness also testified that the note was brought by Saunders to the store of the witness and Wilson, and transferred to Wilson for his interest in the store, which was estimated, correctly as the witness thought, to be worth one thousand dollars. Wilson refused to take it until he learned that the securities were responsible men.

The statute making bills of exchange and promissory notes evidence of debt, has never been construed to extend so far as it was carried by the court in this instance. Under the plea of non assumpsit, alterations may be shown in discharge of a party who was ignorant of such alteration. This was done in the case of Oakey *v.* Wilcox, 3 Howard, 330. The doctrine is well settled, that if a note or bill be altered in any material part, the parties

who did not consent to such alteration will be discharged; as if the sum of money, time when payable, or consideration, be altered. Chitty on Bills, 9th Amer. Ed. 204, and note (*u*).   Such alteration operates as a *discharge*, by matter subsequent to the execution of the note or bill, hence it is not necessary to deny the execution by oath.   For this error the judgment must be reversed.   There are many other grounds relied on to reverse the judgment, most, or perhaps all of which fall under the decision in the case of the Commercial Bank of Natchez, use of *Briggs et al. v.* Claiborne, 5 Howard, 301, and need not be particularly noticed.

The judgment must be reversed, and cause remanded.